IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| DONNA GOULD, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 1:18-cv-01283 |
| GC SERVICES, L.P., a Texas Limited Partnership, | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

# COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND TEXAS DEBT COLLECTION PRACTICES ACT

Plaintiff, DONNA GOULD, brings this action for the illegal practices of Defendant, GC SERVICES, L.P. ("GC SERVICES"). In support of her Complaint, Plaintiff says:

1. Plaintiff, demanding a trial by jury, brings this action for the illegal practices of GC SERVICES who used unfair, unconscionable, false, deceptive, and misleading practices, and other illegal practices, in connection with its attempts to collect alleged debts from him. Plaintiff alleges GC SERVICES's collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and Texas Debt Collection Practices Act, Tex. Fin. Code § 392, *et seq.* ("TDCPA").

2. Such collection practices include, *inter alia*, sending consumers written communications in an attempt to collect debts, which falsely state the consumers' alleged defaulted debts are continuing to accrue daily interest, late charges, and other charges.

3. The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has

determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

4. The FDCPA is a strict liability statute which provides for actual or statutory damages upon the showing of one violation. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "unsophisticated debtor." *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994).

5. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); the threat to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

6. The TDCPA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for the purpose of collecting a consumer debt. Tex. Bus. & Com. Code Ann § 17.50; *Cushman v. GC Services, L.P.*, 397 Fed. Appx. 24 (5th Cir. 2010) (discussing the "tie-in" provision between the TDCPA and deceptive practices Acts).

7. Plaintiff seeks statutory damages, injunctive relief, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA, TDCPA, and all other common law or statutory regimes.

8. This case involves an obligation, or an alleged obligation, primarily for personal, family, or household purposes, and arising from a transaction or alleged transaction. As such, this action arises out of "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

## II.  PARTIES

9. Plaintiff is a natural person.

10. At all times relevant to this complaint, Plaintiff was a citizen of, and resided in, the City of Waupaca, Waupaca County, Wisconsin.

11. At all times relevant to this complaint, GC SERVICES is a for-profit Limited Partnership existing pursuant to the laws of the State of Texas.

12. Plaintiff is informed and believes, and on that basis alleges, that GC SERVICES maintains its principal place of business at 6330 Gulfton, City of Houston, Harris County, Texas.

## III.  JURISDICTION & VENUE

13. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331, 1337.

14. Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. § 1367.

15. Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

16. Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because the Defendant is subject to personal jurisdiction in the State of Wisconsin at the time this action is commenced.

# IV. FACTS CONCERNING THE PARTIES

17. Plaintiff is alleged to have incurred and defaulted on a financial obligation to Citibank, N.A. ("Citibank Obligation").

18. The alleged Citibank Obligation arose out of a transaction in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

19. Plaintiff is informed and believes, and on that basis alleges, that prior to September 14, 2018, the original creditor of the Citibank Obligation accelerated the debt and demanded full payment at once, determined the debt was uncollectable, and then decided to "charge-off" the debt.

20. Creditors charge-off defaulted debts in accordance with federal regulations that require the creditor to remove the debt from their financial statements as assets. *See* Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 713-14 (2008) ("a credit card account is characterized as a 'charge-off' account (or worthless account for taxable purposes) when no payment has been received for 180 days."). These charged-off accounts are treated as a loss and the creditor receives a tax deduction under the Internal Revenue Code.

21. GC SERVICES contends the Citibank Obligation is in default.

22. The alleged Citibank Obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

23. The alleged Citibank Obligation is a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

24. Plaintiff is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

25. Plaintiff is, at all times relevant to this complaint, a "consumer" as that term is defined by Tex. Fin. Code § 392.001(1).

26. Plaintiff is informed and believes, and on that basis alleges, that sometime prior to November 13, 2016, the creditor of the Citibank Obligation either directly or through intermediate transactions assigned, placed, or transferred the debt to GC SERVICES for collection.

27. GC SERVICES is a company that collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

28. GC SERVICES is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

29. GC SERVICES is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

30. GC SERVICES is, at all times relevant to this complaint, a "debt collector" as that term is defined by Tex. Fin. Code § 392.001(6).

31. GC SERVICES is, at all times relevant to this complaint, a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

32. On or about September 14, 2017, GC SERVICES mailed a collection letter to Plaintiff concerning the Citibank Obligation, which was dated September 14, 2017, and which Plaintiff received in the ordinary course of mail. ("9/14/2017 Letter"). A true and correct copy of the 9/14/2017 Letter is attached hereto as **Exhibit A**, except that the undersigned counsel has, in accordance with Fed. R. Civ. P. 5.2, partially redacted the financial account numbers and Plaintiff's home address to protect Plaintiff's privacy.

33. The 9/14/2017 Letter was mailed, or caused to be mailed, to Plaintiff by persons employed by GC SERVICES as a "debt collector" as defined by 15 U.S.C. § 1692a(6).

34. The 9/14/2017 Letter was sent to Plaintiff in connection with the collection of a "debt" as defined by 15 U.S.C. § 1692a(5).

35. The 9/14/2017 Letter was sent to Plaintiff in connection with the collection of a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

36. The 9/14/2017 Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

37. The 9/14/2017 Letter GC SERVICES states, "MINIMUM PAYMENT DUE: **$1,009.63**".

38. The bottom of the front page of the 9/14/2017 Letter contains the following disclaimer:

> As of the date of this letter, you owe $1,009.63. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater.

39. The 9/14/2018 Letter GC SERVICES falsely states, "MINIMUM PAYMENT DUE: $1,009.63" when, in fact, that is the maximum amount due that will *ever* be sought for the Citibank Obligation.

40. Plaintiff is informed and believes, and on that basis alleges, the creditor of the Citibank Obligation may not legally impose interest on the debt GC SERVICES sought to collect from Plaintiff.

41. The creditor of the Citibank Obligation does not, and will not, add interest to the debt GC SERVICES sought to collect from Plaintiff.

42. The creditor of the Citibank Obligation may not legally or contractually impose late charges on the debt GC SERVICES sought to collect from Plaintiff.

43. The creditor of the Citibank Obligation does not, and will not, add late charges to the debt GC SERVICES sought to collect from Plaintiff.

44. The creditor of the Citibank Obligation may not legally or contractually impose other charges on the debt GC SERVICES sought to collect from Plaintiff.

45. The creditor of the Citibank Obligation does not, and will not, add other charges to the debt GC SERVICES sought to collect from Plaintiff.

46. The disclaimer on ***Exhibit A*** is materially false, deceptive, and misleading in that, *inter alia*, it falsely suggests to unsophisticated consumers that the amount of their debts will increase ***daily*** due to an undisclosed amount of "interest, late charges, and other charges" that "vary from day to day."

47. The disclaimer in ***Exhibit A*** is materially false, deceptive, and misleading in that, *inter alia*, they state the consumer will, as a consequence, owe an additional undisclosed sum of money after payment is tendered to GC SERVICES.

48. ***Exhibit A*** caused Plaintiff uncertainty and forced her to guess how much money she allegedly owed GC SERVICES, how much money would accrue daily on her alleged debt, how much additional money she would owe if she paid the amount demanded, and if/when GC SERVICES's collection efforts would actually stop if she remitted the entire payment demanded.

49. ***Exhibit A*** would cause unsophisticated consumers uncertainty and force them to guess how much money they allegedly owed GC SERVICES, how much money would accrue daily on their alleged debts, how much additional money they would owe if they paid the amount demanded in ***Exhibit A***, and if/when GC SERVICES's collection efforts would actually stop if they remitted the entire payment demanded.

50. GC SERVICES intended that its materially false statement contained in ***Exhibit A*** cause Plaintiff confusion about the exact amount of money allegedly owed.

51. GC SERVICES intended that its materially false and deceptive statement contained in ***Exhibit A*** cause Plaintiff to incorrectly believe she would benefit financially by

immediately sending payment for the amount demanded rather than waiting to make such payment.

## V. FIRST CAUSE OF ACTION
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

52. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

53. GC SERVICES violated the FDCPA.

54. GC SERVICES's violations, with respect to its written communications in the form attached as *Exhibit A* include, but are not limited to:

(a) Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

(b) Making false, deceptive, and misleading representations concerning the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

(c) Making false, deceptive, and misleading representations concerning any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt in violation of 15 U.S.C. § 1692e(2)(B);

(d) Making false threats to take action that cannot legally be taken and/or that is not intended to be taken in violation of 15 U.S.C. §§ 1692e and 1692e(5);

(e) Using false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10); and

(f) Failing to provide the amount of the debt in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692g(a)(1).

## VI. SECOND CAUSE OF ACTION

## VIOLATIONS OF THE TEXAS DEBT COLLECTION PRACTICES ACT

55. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

56. GC SERVICES violated Tex. Fin. Code § 392.304(a)(8) by making false, deceptive, and misleading statements regarding the character and extent of the debt it sought to collect.

57. GC SERVICES violated Tex. Fin. Code § 392.304(a)(12) by making false, deceptive, and misleading statements that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges that are not authorized by the agreement creating the obligation or legally chargeable to the consumer.

58. GC SERVICES violated Tex. Fin. Code § 392.304(a)(13) by making false, deceptive, and misleading statements that a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges when the award of the fees or charges is subject to judicial discretion.

59. GC SERVICES violated Tex. Fin. Code § 392.304(a)(19) by using false, deceptive, and misleading representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## VII.  PRAYER FOR RELIEF

60. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor as follows:

**A.** **For the FIRST CAUSE OF ACTION**:

(i) An award of actual damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(1);

(ii) An award of statutory damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A);

(iii) Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

(iv) For such other and further relief as may be just and proper.

B. **For the SECOND CAUSE OF ACTION**:

(i) For injunctive relief for Plaintiff pursuant to Tex. Fin. Code § 392.403(a)(1), including enjoining GC SERVICES from engaging in further violations of Chapter 392 of the Texas Finance Code as complained of herein;

(ii) For declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202 adjudicating that GC SERVICES's collection conduct complained of violates the violates the TDCPA;

(iii) Attorney's fees, litigation expenses, and costs pursuant to Tex. Fin. Code § 392.403(b); and

(iv) For such other and further relief as may be just and proper.

## VIII. JURY DEMAND

Plaintiff hereby demands that this case be tried before a Jury.

Dated: August 20, 2018

*s/Andrew T. Thomasson*
*Andrew T. Thomasson*
Philip D. Stern (NJ Bar # 045921984)
Andrew T. Thomasson (NJ Bar # 048362011)
Francis R. Greene (IL Bar # 6272313)
   *Attorneys for Donna Gould*
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081
Telephone (973) 379-7500
E-mail: Philip@SternThomasson.com
E-mail: Andrew@SternThomasson.com
E-mail: Francis@SternThomasson.com